# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed March 28, 1916.

M. MARSHALL JONES, ET AL.,
VS.
PHILLIPS LEE GOLDSBOROUGH,
GOVERNOR AND COMMANDER-
IN-CHIEF OF THE MILITIA
OF MARYLAND, ET AL.

*Isaac Lobe Straus* for plaintiffs.

*Edgar Allan Poe*, Attorney General, for defendants.

HEUISLER, J.—

A demurrer was filed by all the defendants, in the above case, to the bill of complaint, alleging:

(a) That the Court was without jurisdiction to entertain the bill;

(b) That plaintiffs have not stated such a case as entitles them to the relief prayed, and,

(c) That plaintiffs have not stated such a case as entitles them to any relief whatever in a court of equity.

The bill of complaint is voluminous —but in substance its allegations are that the plaintiffs are members of the Maryland Militia aggregated in Company I of the Fifth Maryland Regiment of Infantry. That a vacancy occurred in the office of first lieutenant of said company—and that thereupon it became the right of the enlisted men of said company to fill the said vacancy and to elect the said first lieutenant; and the duty of the regimental commander to issue proper order for such election by the enlisted men. That the enlisted men of said company made known their desire to have such election held, upon numerous occasions and during a long period of time, to the company commander, who was by them requested to make known their desire to the regimental commander— and that this was accordingly done. That notwithstanding this communication of the men no election was ordered and the vacancy was continued. That then a signed and written request of the enlisted men to have an election ordered was delivered to the captain of the company with the request that it be presented to the commanding officer of the regiment, but that said request was returned to the enlisted men without action thereon. That twice thereafter said written request was again delivered to the company commander "and on both occasions was returned to the enlisted men without any action being taken upon it by the company commander, and

without any action being taken by the commander of the regiment to order an election of first lieutenant by said company, the said position continuing vacant." (Bill of Complaint, folio 7.) That thereafter and until nearly the end of March, 1915, "at nearly every meeting of the company for drill, the enlisted men demanded that an election be held, and kept repeating the inquiry why an election for first lieutenant was not ordered." (Bill, folio 7.) That the said enlisted men from the beginning had made known to the company commander the name of their choice to fill said vacancy and that when the election was ordered they would confirm and ratify said choice; and that this conclusion of the enlisted men was also made known to the regimental commander. And that finally on the 27th of March, 1915, an election was ordered to be held on April 7th, 1915. That on the evening of March 29th, 1915, at a company meeting ordered by the company commander, the said company commander "declared to the enlisted men of said company, including your orators, that all of the enlisted men who had given interviews to the newspapers were going to be court-martialed, dishonorably discharged and fined for so doing. (Bill, folio 17.) Then follows in the bill of complaint an extended statement concerning meetings both in and out of the company rooms—participated in by a number of the enlisted men of said company—and a detailed account of same; and also an account of certain formal resolutions prepared and submitted by said men (Bill, folios 17, 18, 19, 20). Then in Section 8 of said bill it is alleged "that subsequent to the events above detailed the Honorable Phillips Lee Goldsborough, Governor of Maryland and commander-in-chief of the Maryland National Guard, appointed a *Court of Inquiry* to investigate the causes which led up to the dissensions in said Company I during the month of March, 1915, or prior thereto, which said Court of Inquiry convened at the Fifth Regiment Armory on April 7th, 1915"; that said Court heard testimony, concluded its investigation on April 20th, 1915, and on May 4th, 1915, "reported its findings to the convening authority. His Excellency, the Governor of Maryland." Among the findings so returned the said Court held that certain enlisted men *"who were present on the*

*evening of March 29th, 1915, at the Fifth Regiment Armory and who left there and went to Cockey's Hall, where a meeting was held, and who attended either all or some of the subsequent meetings at Cockey's Hall and Red Men's Hall, were in a state of insubordination, and were guilty of acts not in keeping with the proper appreciation of the duties of an enlisted man toward his superior officers. The conduct of these men in marching away from their company quarters for the transaction of business connected with the affairs of their company, their publication of articles in the newspapers, reflecting upon their superior officers and upon the administration of the affairs of their company and regiment, are to be deplored, and show that the enlisted men participating in these meetings did not have a proper conception of their duty as soldiers, nor of their position as enlisted men."*

Plaintiff's Exhibit F, folios 4 and 5:

The findings of the Court having been approved by the convening authority, the following are among his orders therein:

(a) "That all of the enlisted men of Company I, Fifth Infantry, Maryland National Guard, *who were not present* on the night of 29th of March, 1915, at the meeting in the company rooms after drill, and who took no part in the meetings at Cockey's Hall and Red Men's Hall, and who were not in any way involved in the dissensions and insubordination incident to the candidacy of Sergeant M. Marshall Jones are given the privilege of being transferred from Company I to other companies of the Fifth Infantry upon their individual applications for such transfers on or before the 18th day of May, 1915; in the event that such men do not desire such transfer as above authorized, they will be honorably discharged."

(b) "It is ordered that Company I, Fifth Infantry, Maryland National Guard, be mustered out of the service of the State of Maryland at 8.30 P. M. Tuesday, May 18th, 1915."

Exhibit F, folio 10:

There were other orders, but it is not necessary for the purpose of this opinion that they be set out in detail.

The relief prayed for in the bill was to have order marked "B" declared to

be illegal and void; and for a preliminary and perpetual injunction to restrain the defendants and each of them and their representatives from carrying out, performing and executing said order; and for an injunction preliminary and perpetual, restraining the defendants and each of them from interfering in any manner with the status of the plaintiffs, non-commissioned officers and enlisted men of said company—except according to law; and for such other relief as the case may require.

On the bill, affidavits and exhibits, after filing a bond, a preliminary injunction was issued as prayed in the usual form.

On motion of defendants to dissolve this injunction, hearing was had on the demurrer hereinbefore referred to, and after argument, same was taken under consideration. *The challenge of the demurrer goes to the jurisdiction of the Court to entertain the bill.* Under the provisions of Article 9, Section 1 of the Constitution of Maryland it is written that "the General Assembly shall make, from time to time, such provisions for organizing, equipping and *disciplining* the militia, as the exigency may require, and *pass such laws* to promote volunteer militia organizations as may afford them effectual encouragement."

And in the provisions of Article 30 of the Declaration of Rights, we read "that in all cases, and at all times the military ought to be under strict subordination to and control of the civil power." Between this declaration and the constitutional power conferred upon the General Assembly, there is an apparent but no real and legal conflict. The declaration in the bill of rights has been interpreted "as a declaration of abstract principles whose sole practical effect is to declare from what standpoint the law shall be considered and in what spirit interpreted."

Niles, Md. Con. Law, folio 12; and in the Court of Appeals of Maryland, in the case of Baltimore vs. State, 15 Md. 459, in relation thereto, we find the following:

"We are to bear in mind that the Declaration of Rights is not to be construed by itself according to its literal meaning; *it* and *the Constitution compose our form of government and they must be interpreted as one instrument.*

The former announces principles upon which the government about to be established will be based. If that differ the Constitution must be taken as a limitation or qualification of the general principles previously declared according to the subject and language employed."

Interpreting the words of the declaration and the provision of the Constitution *as one instrument,* we find in the one case *the general principle* "of the control of the civil power over the military"; and in the other case *"the limitation or qualification of the general principle,"* announced in the constitutional words that the General Assembly *alone* shall make provision for "organizing, equipping and disciplining the militia * * * and pass such laws * * * as may afford them effectual encouragement."

The general question of organization, equipment and discipline is to find its exclusive expression in the statutes enacted by the General Assembly—but when these laws are made—and the provisions thereof are charged as not being enforced according to and within the law as written—then clearly review and relief can be asked of the civil power—and the Court can be called upon in settlement of the controversy. It has been urged that Section 69 of Article 65 of the Maryland Code is controlling in this case as to the question of jurisdiction. That Section reads as follows: *"No action or proceeding shall be prosecuted or maintained against a member of a military court or officer or person acting under its authority, or reviewing its proceedings on account of the approval or imposition or execution of any sentence, or the imposition or collection of a fine or penalty, or the execution of any warrant, writ, execution, process or mandate of a military Court."*

Under the facts in this case there can be no possible application of the above section. The facts are that a *Court of Inquiry* was appointed—and that is a *military court* under Sec. 68 of Article 65; that the said Court duly convened, took testimony—formed its opinions and submitted its findings to the Governor of the State—without recommendation or suggestion—and that the findings *as submitted* were approved by order of the Governor—and the orders heretofore set out duly issued.

It is also a fact that the Governor of the State is a *military officer* of the State—being Commander-in-Chief of the land and naval forces—under Article 2, Sec. 8 of the Constitution. These are the only facts in the record, however, to which any application of the statute can be made; while on the contrary there is nowhere in the record anything that in any way can be considered as *"a sentence; imposition of a fine, warrant, writ, execution, process* or *mandate* of a military Court. The Court has no difficulty in this juxtaposition of the facts and the law in concluding that there can be no application in this controversy of the provisions of Sec. 69 of Article 65. The findings of the Court of Inquiry, as they reached the Governor, were substantially that certain enlisted men—"of Company I, 5th Infantry, M. N. G."—were guilty of,

(a) Disrespect to Superiors.

(b) Mutiny.

(c) Conduct prejudicial to good order and military discipline.

Under the provisions of Section 62 of Article 65 of the Maryland Code, it is expressly provided that "Enlisted men may be tried by *Court Martial* for the following offenses: (a) *disrespect to superiors;* (b) *Mutiny;* and (c) *conduct prejudicial to good order and military discipline";* and a number of other offenses not pertinent in this consideration.

Upon the receipt of the findings above set out, and under the law, there was but one course to be followed by the Governor as Commander-in-Chief, if he was persuaded from the findings that such action was necessary and proper—*and that was to put the men on trial before a Court Martial.*

This was not done, but the summary and final action complained of was taken at once on receipt of the findings—and the bill of complaint herein was thereupon filed.

The Court is of opinion that there is complete jurisdiction in the civil courts to entertain the bill of complaint; that the plaintiffs have stated a case for relief—and that they have stated such a case as clearly entitles them to equitable relief—if the facts set out in their complaint are supported by probative and legal testimony, and an order will be signed overruling the demurrer, with leave to the

defendants to answer within fifteen days. A word of comment in conclusion. It is earnestly urged in argument that the Governor, as commander-in-chief, has the *inherent right* to dismiss enlisted men, but that officers have the privilege of trial by Court Martial. The Court finds no warrant for this contention in the law of our State, and in its absence, will not approve such contention. In construing the provisions of the law applicable to this case we are construing an instrument under which powers to exist must be granted and are not to be implied or presumed, and it is no impeachment of the integrity, fidelity or intelligence or the Executive to insist that it was not meant for him to exercise powers which are not conferred upon him. The idea of a presumed power or *the inherent right* of the Commander-in-chief, as contended for in the argument, is a novelty in our constitutional history.